IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | |
|---|---|
| LOUIE ALEXANDER, | : |
| Plaintiff, | : |
| -vs- | : Case No. 3:06-cv-498-WKW |
| OPELIKA CITY BOARD OF EDUCATION, | : |
| Defendant. | : |

**DEFENDANT'S REPLY BRIEF IN SUPPORT OF
MOTION FOR SUMMARY JUDGMENT**

COMES NOW the Defendant Opelika City Board of Education in the above-styled cause and briefly replies to Plaintiff Louie Alexander's *Memorandum Brief in Opposition to the Motion for Summary Judgment of the Defendant*.

**A.   DISMISSAL OF OTHER CLAIMS**

Alexander does not dispute that all causes of action initially brought in this lawsuit, with the exception of his hostile environment claim, are due to be dismissed. (Board Brief pp. 1-2).

**B.   PUNITIVE DAMAGES**

Alexander does not dispute that he cannot recover punitive damages against the Board in this cause of action. (Board Brief p. 23).

**C.   FACTS**

1.   Alexander argues that use of the term "boy" was "a lot of times, all the time, constantly, a whole lot of times." (Opposition Brief p. 15). However, this generic characterization ignores that when asked for details, Alexander only related the following regarding the use of the term "boy": three incidents with his supervisor, three incidents with a co-worker, one incident with another co-worker and a comment regarding a noose that was not directed at him. (See Board

Brief p. 17). These seven incidents occurred over the course of Alexander's two years of employment with the Board.

    2.    Alexander relies on the statement in his EEOC Charge that his supervisor constantly required him to do the work of white employees. (See Opposition Brief p. 7). However, he provides no evidence whatsoever to contradict the testimony of Joe Wingo who explained that any adjustments made in Alexander's work assignments were coupled with in-kind adjustments in the assignments of all other employees. (Wingo Aff. at ¶¶4-7). Alexander's perception that he had more work to do than the other custodians is not evidence of a hostile environment.

    3.    Alexander fails to present any evidence that the terms and conditions of his work environment were so severely altered that he could not perform his job.

    4.    Although the facts surrounding Alexander's termination are not directly relevant because he is not pursuing a wrongful termination claim, the facts are telling when considering his claim that he was made to do the work of white employees. For example, one of the problems with Alexander was that he once refused to pick up crumbs in an area of the building where he was not assigned when asked by an administrator. Certainly being asked to pick up crumbs in someone else's area is not evidence that he was forced to do the work of the white custodians. On the contrary, Dr. Neighbors explained that Alexander complained about work that he should not be responsible for in regards to all the other custodians and complained about all the other custodians not taking care of their jobs. (Neighbors Aff. at ¶8). It is significant that Alexander does not deny any of this evidence in his Opposition Brief. In short, Alexander does not present evidence that a term or condition of his employment was altered such that it would constitute harassment.

    5.    Alexander does not deny (i) that the other custodians actually complained about him and (ii) in no way support his claims that the black custodians were made to do the white custodians' work.

6.  Alexander does not deny that the other custodians reported that he would not pull his weight during team task assignments.

7.  Alexander does not deny that there was never a report from other custodians that there was a racial harassment or discrimination problem at the school.

8.  Alexander does not deny that he was confrontational with co-workers.

9.  Alexander does not provide any explanation as to why he did not complain of the comment about a "noose" in his EEOC Charge. This is significant if he now attempts to argue that the comment was racially charged and/or offensive to him. He further provides no testimony that he relayed this alleged comment to the Board when he was allegedly complaining about the racial harassment.

D.  **ALEXANDER CANNOT ESTABLISH A HOSTILE ENVIRONMENT CLAIM**

Alexander's only response to the precedential case authority discussed by the Board in support of its *Motion for Summary Judgment* (which demonstrates that the Eleventh Circuit has never found a hostile environment to be established based on facts similar to Alexander's), is to argue that the cases are inapposite because they deal with "the general use of derogatory phrases, cursing and the like." (See Opposition Brief p. 18). This characterization of the case law relied upon by the Board is not only insufficient, but incorrect. The Board has demonstrated through a sampling of the precedential case authority that the facts presented by Alexander do not rise to the level of a severe and pervasive hostile environment claim in the Eleventh Circuit. See *Faragher v. City of Boca Raton,* 524 U.S. 775, 788 (1988).

Moreover, Alexander cites numerous cases regarding a hostile environment claim that are not sufficiently similar to his case to be persuasive. The cases Alexander cites in his *Opposition Brief* are unpersuasive because the facts of those cases significantly more severe than the facts presented here. For instance, he cites:

1) *Miller v. Kenworth of Dothan, Inc.*, 277 F.3d 1269, 1276 (11th Cir. 2002). In that case, the Court found that a reasonable jury could find that the Hispanic plaintiff could have suffered severe and pervasive harassment after being called "spic", "wetback", Mexican mother-----", "Julio" and "Taco" three to four times a day;

2) *Steiner v. Showboat Operating Co.*, 25 F.3d 1459 (9th Cir. 1994). There, the Ninth Circuit found in a sexual harassment case that a supervisor who habitually called his female subordinate "dumb f---- broad", "cunt" and "f---- cunt" and yelled at her "Why don't you go in the restaurant and suck their d---- if you want to comp them so bad?" in front of others was guilty of severe and pervasive harassment;

3) *Martinez v. Bohls Bearing Equipment Co.*, 361 F.Supp.2d 608 (W.D. Tex. 2005). There, a Texas District Court found that a Hispanic employee was subjected to severe and pervasive racial harassment when his supervisor made comments like "Do it like a white man, not like a Mexican", "Do your work like a white man would, not like a dumb Mexican" and "The only thing Mexicans are good for are having babies and getting welfare, and that comes out of my pocket" on a continuous, near daily basis; and

4) *Day v. Colt Constr. & Dev. Co.*, 28 F.3d 1446 (7th Cir. 1994). There, the Seventh Circuit held that a female employee suffered severe and pervasive sexual harassment when her superior subjected her to almost daily gestures, comments and innuendo, including referring to an associate as a "flat chested cunt", referred to the employee spending the week on her back in bed, said he "would eat [her] no matter how [she] smelled", unzipped his pants in front of her while the two were alone on an elevator, and told someone on the phone that the employee was "going down on [him]" while she was on the floor retrieving papers.

In each of these cases relied upon by Alexander, it is clear that the conduct he alleges he suffered is not comparable to that suffered by the afore-mentioned plaintiffs.

Alexander argues that a single incident of harassment can constitute severe and pervasive conduct. (Opposition Brief p. 15). However, Alexander has certainly not presented evidence of any single incident that is severe enough in and of itself to constitute racial harassment. Therefore, any cases relied upon for that proposition of law are irrelevant here. The frequency of the incidents Alexander alleged was sporadic at best. There were allegedly seven uses of the term "boy" and one comment regarding a "noose" in Alexander's two years of employment. This was not something that happened on a daily, weekly or even monthly basis. The infrequency of the alleged comments, while arguably inappropriate, was not severe, and therefore, a hostile environment claim cannot be made here.

Alexander's arguments regarding the severity of the alleged harassment is further without merit because his testimony about what was actually said (according to him) simply does not support the argument that "he was told this in an insulting manner, laughed at and cursed, scorned and demeaned, a lot of times, all the time, constantly, and a lot of times." (Opposition Brief p. 15). While Alexander argues that the comments were intimidating, threatening or demeaning, the evidence does not support this claim. Rather, when reviewing Alexander's testimony in detail, he was somewhat ambiguous how the term "boy" was used and certainly never indicated that he was screamed at or that he was being berated about his job performance at the time the alleged comment was made. Further, he admits the alleged "noose" comment was not directed at him personally, but that his supervisor allegedly looked at him and laughed after making the comment.

Alexander's only other evidence regarding alleged harassment is the claim that he was made to do the white employees' work. Again, this is nothing more than his opinion of what was happening when he was given work assignments and Mr. Wingo clarified that any change of work

assignments caused similar changes, i.e., additional work, for the other custodians. (Wingo Aff. at ¶¶4, 5, 6, 7).

### E.  CONCLUSION

In short, even taking Alexander testimony as true, there is simply no evidence that the alleged comments permeated the workplace such that his working condition was altered enough to establish a hostile environment claim. The alleged comments, if true, certainly could be considered offensive but were in no way so severe or extreme as to create a hostile work environment as that term has been defined under pertinent case authority. The undisputed facts in this case simply fall short of those necessary to create a jury question regarding whether the hostile environment existed.

The Board adopts and incorporates herein all factual and legal arguments made in its *Memorandum Brief in Support of the Motion for Summary Judgment*.

Based on the undisputed facts of this case and precedential case authority, summary judgment is due to be granted on all Alexander's claims against the Board. Under the undisputed facts, there is no genuine issue of material fact to be submitted to a jury. Therefore, the Board requests that summary judgment be granted and all of Alexander's claims be dismissed as a matter of law.

Respectfully submitted this the 14th day of January 2008.

OPELIKA CITY BOARD OF
EDUCATION, Defendant,

By: **/S/James R. Seale**
    James R. Seale (SEALJ3617)
    Elizabeth B. Carter (CARTE3272)
    HILL, HILL, CARTER,
     FRANCO, COLE & BLACK, P.C.
    Post Office Box 116
    Montgomery, Alabama 36101-0116
    (334) 834-7600
    (334) 263-5969 - fax
    E-mail: jrs@hillhillcarter.com
    Counsel for Defendant

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that I have this date electronically filed the foregoing *Defendant's Reply Brief in Support of Motion for Summary Judgment* with the Clerk of the Court for the United States District Court, for the Middle District of Alabama, using the CM/ECF system which will send notification of such filing to: Jeffrey Bennitt, Esquire, (bennittlaw@aol.com)this the 14th day of January 2008.

            **/S/ James R. Seale**
            Of Counsel